IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-153-D

| | |
|---|---|
| STEPHEN ISAKSEN, as Representative of the Estate of Patricia A. Isaksen, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE UNITED STATES OF AMERICA, )<br>)<br>Defendant. ) | **ORDER** |

For the reasons stated in the attached order of today in <u>Fancher v. United States</u>, No. 5:22-CV-315, [D.E. 30] (E.D.N.C. Dec. 20, 2022), the court DISMISSES WITHOUT PREJUDICE plaintiff's complaint for failure to exhaust administrative remedies under section 804(h) of the Camp Lejeune Justice Act.

SO ORDERED. This _20_ day of December, 2022.

_____
JAMES C. DEVER III
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-315

DAVID FANCHER, et. al,            )
                                  )
                    Plaintiffs,   )
                                  )
    v.                            )   **ORDER**
                                  )
UNITED STATES OF AMERICA,         )
                                  )
                    Defendant.    )

On August 10, 2022, or shortly thereafter, various plaintiffs (collectively "plaintiffs") filed complaints under the Camp Lejeune Justice Act of 2022 ("Camp Lejeune Justice Act"), Pub. L. No. 117-18, § 804, 136 Stat. 1802 (2022) [D.E. 1]. On August 26, 2022, plaintiffs filed a joint motion for consolidation and a memorandum in support.[1] On September 29, 2022, the court denied plaintiffs' motion for consolidation. See [D.E. 25]. The court also ordered briefing from the parties on whether plaintiffs had complied with the administrative exhaustion requirement in section 804(h) of the Camp Lejeune Justice Act given that plaintiffs relied on administrative claims that they filed

---

[1] Plaintiffs' cases contain different docket entries for the filings docketed after the initial complaints. These cases are Belt v. United States, No. 7:22-CV-125-D (E.D.N.C.); Partain v. United States, No. 7:22-CV-132-D (E.D.N.C.); Guthrie v. United States, No. 4:22-CV-97-D (E.D.N.C.); Gonzalez v. United States, No. 7:22-CV-130-D (E.D.N.C); Cline v. United States, No. 7:22-CV-141-D (E.D.N.C.); Isaksen v. United States, No. 7:22-CV-132-D (E.D.N.C.); Whatley v. United States, No. 7:22-CV-126-D (E.D.N.C.); Deforge v. United States, No. 7:22-CV-129-D (E.D.N.C.). Plaintiffs, however, each make essentially the same arguments concerning administrative exhaustion. Therefore, the court uses the docket entries and arguments in David Fancher's case in this order. Although this order cites Fancher's docket entries, the court has read and considered every filing in each plaintiff's case. This order applies in each plaintiff's case.

and that the United States Department of the Navy ("Navy") denied before the Camp Lejeune Justice Act became effective on August 10, 2022. Id.

On October 21, 2022, plaintiffs briefed the issue [D.E. 26]. On November 10, 2022, the United States responded [D.E. 28]. On November 17, 2022, plaintiffs replied [D.E. 29]. As explained below, the court dismisses without prejudice plaintiffs' complaint for failure to exhaust administrative remedies under section 804(h) of the Camp Lejeune Justice Act. Plaintiffs' administrative claims that they filed and that the Navy denied before August 10, 2022, do not satisfy the administrative exhaustion requirement in section 804(h) of the Camp Lejeune Justice Act.

I.

Between 2010 and 2017, each plaintiff submitted a Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680, et seq., claim to the Navy under the FTCA administrative exhaustion requirement in 28 U.S.C. § 2675(a) alleging injuries from harm allegedly caused by exposure to the water at Camp Lejeune Marine Corps Base, North Carolina. See [D.E. 26-3–26-11].[2] By 2019, the

---

[2] 28 U.S.C. § 2675 provides that:

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

(b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of

2

Navy had denied plaintiffs' claims. See id. In 2019, each plaintiff requested reconsideration of their claims. See id. On August 5, 2022, the Navy denied plaintiffs' requests for reconsideration. See id. In its final denial, the Navy stated that plaintiffs'

> claims have not, and will not, be considered sufficient to meet the requirements of any other statute, including the Camp Lejeune Justice Act. To meet the requirements of the Camp Lejeune Justice Act, you must submit a claim signed and dated after the date of enactment of that statute so that this office can consider the claim under the substantive requirements of that statute.

See [D.E. 28-1] 7.

On August 10, 2022, President Biden signed the Camp Lejeune Justice Act into law. See Pub. L. No. 117-168, § 804. The Camp Lejeune Justice Act created a new federal cause of action permitting "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" for individuals who resided, worked, or were otherwise exposed for not less than 30 days during the period between August 1, 1953, and December 31, 1987. See id. § 804(b). In the Camp Lejeune Justice Act, Congress established the burden of proof for this new federal cause of action, provided the United States District Court for the Eastern District of North Carolina with "exclusive jurisdiction" and "exclusive venue" for this new federal cause of action, and provided for jury trials for this new federal cause of action. See id. §§ 804(c)–(d). Congress also abrogated the discretionary function exception otherwise available to the United States under 28 U.S.C. § 2680(a),[3]

---

> intervening facts, relating to the amount of the claim.
>
> (c) Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.

28 U.S.C. § 2675.

[3] 28 U.S.C. § 2680(a) provides that:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

prohibited the award of punitive damages, and provided that the Camp Lejeune Justice Act "does not apply to any claim or action arising out of the combatant activities of the Armed Forces." Id. §§ 804(f)–(g) & (i). Moreover, Congress provided that "[a]n individual may not bring an action under this section [i.e., the Camp Lejeune Justice Act] before complying with section 2675 of title 28, United States Code." Id. § 804(h).

The Camp Lejeune Justice Act applies "only to a claim accruing before the date of enactment of this Act" and includes its own statute of limitations. Id. § 804(j)(1). As for the statute of limitations, the Camp Lejeune Justice Act states that a "claim in an action under this section may not be commenced after the later of (A) the date that is two years after the date of enactment of this Act; or (B) the date that is 180 days after the date on which the claim is denied under [28 U.S.C. § 2675]." Id. § 804(j)(2). The Camp Lejeune Justice Act also states that "[a]ny applicable statute of repose or statute of limitations, other than under paragraph (2), shall not apply to a claim under the Camp Lejeune Justice Act." Id. § 804(j)(3).

On August 10, 2022, or shortly thereafter, various plaintiffs filed complaints under the Camp Lejeune Justice Act alleging harm caused by exposure to the water at Camp Lejeune. Plaintiffs argue that the text, structure, and purpose of the Camp Lejeune Justice Act support their argument that the claims that they filed and that the Navy denied before the Camp Lejeune Justice Act became law on August 10, 2022, comply with the administrative exhaustion requirement in section 804(h).

---

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

See [D.E. 26, 29]. Essentially, plaintiffs argue that Congress intended the Camp Lejeune Justice Act to provide a new cause of action to vindicate a preexisting claim. Plaintiffs contend that Congress included the two-year statute of limitation in section 804(j)(2)(A) because Congress knew preexisting claims under 28 U.S.C. § 2675 would not meet the 180-day statute of limitations in section 804(j)(2)(B). Plaintiffs also argue that the court should construe the Camp Lejeune Justice Act in favor of current and former members of the armed forces and that the United States' reading of the Camp Lejeune Justice Act frustrates the purpose of the Camp Lejeune Justice Act. See [D.E. 26, 29].

The United States responds that plaintiffs have not complied with the administrative exhaustion requirement in section 804(h) of the Camp Lejeune Justice Act. See [D.E. 28]. Essentially, the United States argues that plaintiffs' interpretation of the Camp Lejeune Justice Act does not comport with the statute's text, structure, or purpose. The United States also argues that plaintiffs' proposed construction frustrates the purpose of requiring administrative exhaustion in Section 804(h) because plaintiffs have not given the Navy the administrative opportunity to assess its litigation risk under the Camp Lejeune Justice Act and to resolve claims under the Camp Lejeune Justice Act administratively and thereby obviate the need for costly and time-consuming litigation. See id.

## II.

### A.

"In interpreting a statute, 'a court should always turn first to one, cardinal canon [of construction] before all others': the plain meaning rule." Ayes v. U.S. Dep't of Veterans Affs., 473 F.3d 104, 108 (4th Cir. 2006) (alteration in original) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992)). In applying the plain meaning rule, courts must "consider the context in

5

which the statutory words are used because [courts] do not construe statutory phrases in isolation; [courts] read statutes as a whole." Id. (cleaned up). "The [statutory construction] inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." Barnhart v. Sigmon Coal. Co., 534 U.S. 438, 450 (2002) (quotation omitted); see Ayes, 473 F.3d at 108.

Section 804(h) of the Camp Lejeune Justice Act states that "[a]n individual may not bring an action under this section before complying with section 2675 of title 28, United States Code." Pub. L. No. 117-168, § 804(h). Section 804(a) states that "[t]his section may be cited as the Camp Lejeune Justice Act of 2022." Id. § 804(a) (emphasis added). Thus, the reference to "section" in section 804(h) means the Camp Lejeune Justice Act. Furthermore, as discussed, section 804(b) creates a new federal cause of "action . . . to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." Id. § 804(b). Accordingly, a plain reading of section 804(h) makes clear that section 804(h) applies only to a claim in an action that has "yet to be brought—not to ones that have already been filed." Bishop v. Lewis, 155 F.3d 1094, 1095 (9th Cir. 1998); see Lindh v. Murphy, 521 U.S. 320, 328 n.4 (1997); Hughes Aircraft Co. v. U.S. ex rel. Schumer, 520 U.S. 939, 950 (1997).

Congress expressly prescribed the reach of the Camp Lejeune Justice Act. Congress created a new federal cause of action in section 804(b), defined the burden of proof in section 804(c), established exclusive jurisdiction and exclusive venue for such causes of action in the United States District Court for the Eastern District of North Carolina in section 804(d), created a new statute of limitations applicable to the new federal cause of action in section 804(j), and required administrative exhaustion under section 804(h) before a person could "bring an action under [the

6

Camp Lejeune Justice Act]." Pub. L. No. 117-168, §§ 804(b)–(d), (h) & (j). The Camp Lejeune Justice Act also specifically precludes certain defenses and immunities. See id. §§ 804(f), (j)(3).

The title of section 804 refers to the Camp Lejeune Justice Act as a "federal cause of action relating to water at Camp Lejeune[,]" which comports with the new federal cause of action Congress created in section 804(b). See id. § 804(b). Notably, before Congress enacted the Camp Lejeune Justice Act, courts dismissed numerous claimants' FTCA causes of action arising from harm that was allegedly caused by exposure to the water at Camp Lejeune. The courts dismissed these FTCA causes of action due to North Carolina's statute of repose, the FTCA discretionary function exception in 28 U.S.C. § 2680(a), and the Feres doctrine. See, e.g., In re Camp Lejeune N.C. Water Contamination Lit., 263 F.3d 1318, 1362–65 (N.D. Ga. 2016), aff'd, 774 F. App'x 564 (11th Cir. 2019) (per curiam) (unpublished); Bryant v. United States, 768 F.3d 1378, 1380–86 (11th Cir. 2014); Bell v. Dept. of Navy, Off. of Judge Advocate Gen., No. 4:19-CV-2221, 2021 WL 1143852, at *2–5 (E.D. Mo. Mar. 25, 2021) (unpublished); Clendening v. United States, No. 7:19–CV–137, 2020 WL 3404733, at *2–6 (E.D.N.C. June 19, 2020) (unpublished), aff'd, 19 F.4th 421, 426–37 (4th Cir. 2021); Tate v. Camp Lejeune, No. 4:19-CV-91, 2019 WL 7373699, at *1–3 (E.D.N.C. Dec. 30, 2019) (unpublished); Swanson v. United States, No. 3:18-cv-2148, 2019 WL 7633157, at *2–3 (D. Or. Nov. 6, 2019) (unpublished); Perez v. United States, No. 09-22201-CIV, 2010 WL 11505507, at *2–5 (S.D. Fla. Mar. 1, 2010) (unpublished); Snyder v. United States, 504 F. Supp. 2d 136, 139–43 (S.D. Miss. 2007).

The court has a "duty 'to give effect, if possible, to every clause and word of a statute.'" United States v. Menasche, 348 U.S. 528, 538–39 (1955) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883)); see Williams v. Taylor, 529 U.S. 362, 404 (2000); Market Co. v. Hoffman, 101 U.S. 112, 115–16 (1879). Courts are "reluctan[t] to treat statutory terms [and phrases] as

surplusage." Babbitt v. Sweet Home Chapter, Communities for Great Ore., 515 U.S. 687, 698 (1995); see Ratzlaf v. United States, 510 U.S. 135, 140 (1994).

Section 804(j) contains a statute of limitations. Under section 804(j)(1), Congress limited the Camp Lejeune Justice Act to claims "arising before the date of enactment of [the Camp Lejeune Justice Act.]" Pub. L. No. 117-168, § 804(j)(1). Congress did not define "claim" in the Camp Lejeune Justice Act. However, Black's Law Dictionary defines "claim" to mean, inter alia, a "demand for money, property, or a legal remedy to which one asserts a right." Claim, BLACK'S LAW DICTIONARY (11th ed. 2019). Generally, a claim "accrues" when a person is injured. See United States v. Kubrick, 444 U.S. 111, 119 n.6 (1979); Henderson v. United States, 785 F.2d 121, 125–26 (4th Cir. 1986); Wilkinson v. United States, 677 F.2d 998, 1000–02 (4th Cir. 1982). Thus, the Camp Lejeune Justice Act applies to those damaged by exposure to the water at Camp Lejeune before August 10, 2022 (i.e., the date when the Camp Lejeune Justice Act became law).

Plaintiffs contend that they have a claim accruing before the date of enactment of the Camp Lejeune Justice Act within the meaning of section 804(j)(1). Of course, before August 10, 2022, each plaintiff did make a demand for money concerning an alleged injury caused by exposure to the water at Camp Lejeune. However, each plaintiff's claim under the Camp Lejeune Justice Act did not accrue until August 10, 2022, when the Camp Lejeune Justice Act became law. See, e.g., McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019) (a plaintiff's claim accrues under federal law when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief); Wallace v. Kato, 549 U.S. 384, 388 (2007) (same); Regains v. City of Chicago, 918 F.3d 529, 533 (7th Cir. 2019) (same). On August 10, 2022, each plaintiff's statute of limitations began to run in section 804(j)(2). In addition, before bringing a Camp Lejeune Justice Act claim in

8

an action in the United States District Court for the Eastern District of North Carolina, each plaintiff had to comply with the administrative exhaustion requirement in section 804(h).

Section 804(j)(2) provides a statute of limitations for "a claim in an action under" the Camp Lejeune Justice Act. The phrase "claim in an action under" the Camp Lejeune Justice Act is different than simply the word "claim" in section 804(j)(1). The phase "claim in an action under" the Camp Lejeune Justice Act means a claim for relief under the Camp Lejeune Justice Act in a civil action filed in the United States District Court for the Eastern District of North Carolina. See Raplee v. United States, 842 F.3d 328, 332–33 (4th Cir. 2016) (The word "action" has "only one reasonable meaning: it refers to a federal civil action. . . . The only way to begin a federal civil action is by filing a complaint with a federal district court."). Section 804(j)(2) provides that a "claim in an action under this section [i.e., the Camp Lejeune Justice Act] may not be commenced after the later of (A) "the date that is two years after the date of enactment of this Act;" or (B) "the date that is 180 days after the date on which the claim is denied under [28 U.S.C. § 2675]." Pub. L. No. 117-168, § 804(j)(2).

Plaintiffs argue that Congress intended the two-year statute of limitation in section 804(j)(2)(A) to allow claimants to rely on administrative claims that they filed and that the Navy denied before the Camp Lejeune Justice Act became effective on August 10, 2022, for administrative exhaustion under section 804(h). See [D.E. 26] 6–7. The court rejects plaintiffs' argument as inconsistent with the text, structure, and purpose of the Act. First, the Camp Lejeune Justice Act's statute of limitation period mirrors the FTCA's time period for commencing an action against the United States. Compare Pub. L. No. 117-168, § 804(j)(2) with 28 U.S.C. § 2401 ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months

9

after the date of . . . notice of final denial of the claim by the agency to which it was presented."). This reference to section 2675 in section 804(h) and language similar to section 2401 in section 804(j)(2) of the Camp Lejeune Justice Act support the court's conclusion that claims filed and denied before August 10, 2022, do not meet the administrative exhaustion requirement under section 804(h). In the Camp Lejeune Justice Act, Congress abrogated parts of the United States' immunity and created a new federal cause of action, with an administrative exhaustion requirement and statute of limitation periods similar to the FTCA. The administrative exhaustion requirement in section 804(h) ensures that the United States and the Navy have time to review the new Camp Lejeune Justice Act claims in light of the new federal cause of action and to facilitate administrative settlement. See Pub. L. No. 117-168, §§ 804(e), (h) & (j). If the claimant is not satisfied with the Navy's offer in the administrative process or the Navy takes more than 180 days to make a settlement offer, the claimant can file suit in the United States District Court for the Eastern District of North Carolina. See id. § 804(j)(2).

The court's interpretation of the statute of limitations period in section 804(j) of the Camp Lejeune Justice Act comports with administrative exhaustion in section 804(h) of the Camp Lejeune Justice Act and benefits those entitled to bring administrative claims and to sue under the Camp Lejeune Justice Act, benefits the Navy who can seek to resolve claims administratively, and benefits the United States District Court for the Eastern District of North Carolina. If the court were to adopt plaintiffs' argument that the claims that plaintiffs submitted and that the Navy denied before August 10, 2022, satisfy the administrative exhaustion requirement in section 804(h), the court would effectively abrogate portions of the Camp Lejeune Justice Act and invite an early flood of lawsuits into a single court with four United States District Judges. For example, assume that a Marine veteran, on January 2, 2019, filed a claim under 28 U.S.C. § 2675 for harm that was caused by

10

exposure to the water at Camp Lejeune and that the Navy denied the claim on July 1, 2019. Before August 10, 2022, the veteran would not have had any chance of success in a civil action under existing precedent. Under the plaintiffs' interpretation of the Camp Lejeune Justice Act, however, the veteran could file an action under the Camp Lejeune Justice Act on August 10, 2022, and completely bypass the administrative process that Congress required in section 804(h). Moreover, according to plaintiffs, the veteran would have to file an action under the Camp Lejeune Justice Act by August 10, 2024, or section 804(j)(2)(A) would bar the veteran from bringing an action. Section 804(j)(2)(B) would do nothing for the veteran because the 180-day period referenced in section 804(j)(2)(B) would have expired 180 days after July 1, 2020, which is before the Camp Lejeune Justice Act became law on August 10, 2022.

In contrast, applying the court's interpretation, if the same veteran filed a claim under 28 U.S.C. § 2675 on January 2, 2019, and the Navy denied the claim on July 1, 2019, then the July 1, 2019 date would be irrelevant under section 804(h) and 804(j)(2). Instead, that veteran would need to file an administrative claim under section 804(h) on or after August 10, 2022. The Navy would have the opportunity to address the claim and its litigation risk under the Camp Lejeune Justice Act and to make a settlement offer to the veteran. If the Navy made a satisfactory settlement offer, then the veteran, the Navy, and this court would avoid costly and time-consuming litigation. Moreover, if, for example, the Navy denied the claim on December 30, 2022, section 804(j)(2)(A) would provide that veteran until August 10, 2024, to file an action under the Camp Lejeune Justice Act. Likewise, if the Navy did not act on the claim for 180 days from August 10, 2022, the veteran could file suit in February 2023. Alternatively, if the Navy was slow to act administratively or settlement negotiations took time and the Navy denied the claim on July 10, 2024, the veteran would have 180

11

days from July 10, 2024, under section 804(j)(2) of the Camp Lejeune Justice Act to file suit. Thus, the court's interpretation gives meaning to each provision in the Camp Lejeune Justice Act.

The court's construction has another salutary effect. The court's construction of section 804(h) avoids subjecting those claimants who filed a claim under 28 U.S.C. § 2675 and had their claims denied before August 10, 2022, to litigation with the United States over whether principles of claim preclusion bar some of those claimants from filing a claim under section 804(h) of the Camp Lejeune Justice Act. Cf. GAF Corp. v. United States, 818 F.2d 901, 912–16 (D.C. Cir. 1987) (holding that claim preclusion barred claimants who litigated and lost on the issue of subject-matter jurisdiction arising from an asbestos claim filed under 28 U.S.C. § 2675 in the Second Circuit from pursuing a subsequent asbestos claim filed under 28 U.S.C. § 2675 in the D.C. Circuit). Plaintiffs' construction of the Camp Lejeune Justice Act subjects some claimants to such collateral litigation.

B.

The court's conclusion comports not only with the text, structure, and purpose of the Camp Lejeune Justice Act, but also with the general purpose of administrative exhaustion. Section 804(h) provides that "[a]n individual may not bring an action under this section before complying with [28 U.S.C. § 2675]." Id. § 804(h); cf. Henderson, 785 F.2d at 123. Section 804(h)'s administrative exhaustion requirement expedites the fair settlement of Camp Lejeune Justice Act claims asserted against the United States. See McNeil v. United States, 508 U.S. 106, 112 n.7 (1993). Section 804's administrative exhaustion requirement enables the Navy to consider each plaintiff's claim with superior information, to seek to resolve each claim in light of the Navy's litigation risk arising from the claim and the newly enacted Camp Lejeune Justice Act, and to avoid expensive and time-consuming litigation. See id.; Henderson, 785 F.2d at 124.

12

As the Supreme Court explained in McNeil, before "1966, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency." McNeil, 508 U.S. at 112 n.7. "Moreover, federal agencies had only limited authority to settle claims." Id. "Because the vast majority of claims ultimately were settled before trial, the Department of Justice proposed that Congress amend the FTCA to require all claims to be presented to the appropriate agency for consideration and possible settlement before a court action could be instituted." Id. (cleaned up). "This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage." Id. "That agency would have the best information concerning the activity which gave rise to the claim." Id. "Since it is the one directly concerned, it can be expected that claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation." Id. "Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions." Id. (footnote omitted). "Although the burden may be slight in an individual case, [28 U.S.C. § 2675] governs the processing of a vast multitude of claims." Id. "The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command." Id.

Although plaintiffs' claims that the Navy denied before August 10, 2022, and plaintiffs' newly filed Camp Lejeune Justice Act causes of action stem from harm that allegedly was caused by exposure to the water at Camp Lejeune, the administrative claims that the Navy denied before August 10, 2022, the administrative claims under section 804(h) of the Camp Lejeune Justice Act, and the Camp Lejeune Justice Act causes of action in complaints filed in this court are distinct and involve dramatically different litigation risk. The FTCA represents a limited waiver of sovereign

13

Case 7:22-cv-00153-D-KS   Document 17   Filed 12/20/22   Page 14 of 18

immunity for injury or loss caused by the negligent or wrongful act of a federal government employee acting within the scope of his or her employment. See 28 U.S.C. § 1346(b); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 807–08 (1995); Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995); Radin v. United States, 699 F.2d 681, 685 (4th Cir. 1983). Subject to certain exceptions, the FTCA permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred. See 28 U.S.C. § 1346(b); Levin v. United States, 568 U.S. 503, 506–07 (2013); Raplee, 842 F.3d at 331; Harris v. United States, 718 F.2d 654, 656–57 (4th Cir. 1983). "The FTCA does not itself provide for a substantive cause of action." Unus v. Kane, 565 F.3d 103, 107 (4th Cir. 2009). Rather, the FTCA "serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the [federal] government has breached a duty under federal law that is analogous to a duty of care recognized by state law." Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992). "Being a waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States." Williams, 50 F.3d at 305; United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992); United States v. Orleans, 425 U.S. 807, 813–19 (1976); Dalehite v. United States, 346 U.S. 15, 31–32 (1953).

The text of 28 U.S.C. § 2675(a) requires that "action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). The administrative exhaustion requirement cannot be waived. See Unus, 565 F.3d at 114; Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278–79 (4th Cir. 2000); Ahmed v. United States, 30 F.3d at 516; Plyler v. United States, 900 F.2d 40, 42 (4th Cir. 1990); Kielwien v. United States, 540 F.2d 676, 679 (4th Cir. 1976).

Congress did not define "claim" in section 2675(a). Section 2675(a) requires two elements for sufficient presentment of a claim to an agency: 1) written notice "sufficient to enable the agency to investigate[,]" and 2) a "sum-certain value on [the] claim." Ahmed, 30 F.3d at 517 (quotations omitted); Kubrick, 444 U.S. at 119 n.6; GAF Corp., 818 F.2d at 905. Failure to administratively exhaust an FTCA claim is a jurisdictional defect, depriving a district court of subject-matter jurisdiction. See Kokotis, 223 F.3d at 278; Plyler, 900 F.2d at 42; cf. United States v. Wong, 575 U.S. 402, 420 (2015) (the time limits in 28 U.S.C. § 2401(b) are not jurisdictional restrictions and are subject to equitable tolling).

Plaintiffs argue that before August 10, 2022, they properly notified the Navy about their claims concerning harm that was allegedly caused by exposure to the water at Camp Lejeune, they placed a sum-certain value on the claims, and that section 804(h) includes claims filed and denied before August 10, 2022. See [D.E. 26] 5–6; [D.E. 29] 2–3. The United States disagrees with plaintiffs' argument about section 804(h) and responds that the Navy reviewed and denied plaintiffs' claims before August 10, 2022, in light of the legal landscape that existed before August 10, 2022, and after analyzing the Navy's very different litigation risk that existed before August 10, 2022. See [D.E. 28-1] 2, 4–5.

One of the core purposes of administrative exhaustion is to facilitate administrative settlement. See McNeil, 508 U.S. at 112 n.7; Kokotis, 223 F.3d at 279; Ahmed, 30 F.3d at 517–18; Henderson, 785 F.2d at 124; Johnson, 704 F.2d at 1442. The Camp Lejeune Justice Act created a new federal cause of action and a new administrative exhaustion requirement for such claims and opened the United States to new liability. See Pub. L. No. 117-168, §§ 804(a), (e). Congress's creation of a new cause of action under the Camp Lejeune Justice Act created a need for the Navy to review administratively these new claims under section 804(h) in order to expedite fair settlements

15

in accordance with the purposes of administrative exhaustion. See McNeil, 508 U.S. at 112 n.7; Kokotis, 223 F.3d at 279; Ahmed, 30 F.3d at 517–18; Henderson, 785 F.2d at 124.

The administrative claim provides the Federal agency with notice sufficient to investigate the claim, assess its liability under the law, and decide whether to settle without the need for a federal lawsuit. See McNeil, 508 U.S. at 112 n.7; Ahmed, 30 F.3d at 517. When an administrative notice of claim asserts one cause of action, but a later lawsuit asserts a different cause of action comprised of different elements, such an administrative notice of claim does not meet section 2675(a)'s exhaustion requirement for the latter claim in the lawsuit. For example, an administrative claim asserting medical malpractice because a drug prescribed and taken during pregnancy caused harm to a baby is different than an informed consent claim that a drug taken before pregnancy caused harm to the mother and the baby. Where a plaintiff made only the medical malpractice claim in the administrative process, the plaintiff cannot pursue the informed consent claim in a later lawsuit because the informed consent claim is unexhausted. See Drew v. United States, No. 3:98-1817-19, Order (D.S.C. Dec. 1, 1998) (unpublished), aff'd by equally divided court without opinion, 231 F.3d 927 (4th Cir. 2000) (en banc); accord Mayes v. United States, 790 F. App'x 338, 339–40 (2d Cir. 2020) (unpublished); Lassic v. United States, No. 14-CV-9959, 2015 WL 5472946, at *4 (S.D.N.Y. Sept. 16, 2015) (unpublished), aff'd, 668 F. App'x 395 (2d Cir. 2016) (unpublished); M.A.R. ex rel. Reisz v. United States, No. 09 CIV. 1727, 2009 WL 3877872, at *4 (S.D.N.Y. Nov. 18, 2009); MBE Capital Partners, LLC v. AVPOL Int'l, LLC, No. 17 CIV. 5992, 2019 WL 568587, at *6 (S.D.N.Y. Feb. 11, 2019); Schunk v. United States, 783 F. Supp. 72, 81 (E.D.N.Y. 1992); see also Henderson v. United States, 785 F.2d 121, 123–24 (4th Cir. 1986). Similarly, an administrative claim for property damage arising from a car accident does not put an agency on notice of a claim for personal injury arising from the same car accident. See Ahmed, 30 F.3d at 516–17. If a plaintiff files a

16

lawsuit against the United States asserting such a personal injury claim in the lawsuit, the court will dismiss the personal injury claim in the lawsuit as unexhausted. See id.; Duty v. United States, 854 F.2d 1316 (4th Cir. 1988) (per curiam) (unpublished table opinion) (same); Henderson, 785 F.2d at 123–24 (same); Allen v. United States, 517 F.2d 1328, 1329–30 (6th Cir. 1975) (per curiam) (same). Likewise, an administrative claim for a breach of warranty does not put the agency on notice of a professional negligence claim. See Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1347 (Fed. Cir. 2008).

Plaintiffs' administrative claims that they filed and that the Navy denied before August 10, 2022, do not satisfy the administrative exhaustion requirement of section 804(h) of the Camp Lejeune Justice Act. Thus, the court dismisses without prejudice plaintiffs' complaint for failure to exhaust administrative remedies. See Unus, 565 F.3d at 114; Kokotis, 223 F.3d at 278; Plyer, 900 F.2d at 42; Henderson, 785 F.2d at 123; Kielwien, 540 F.2d at 679.

### III.

In sum, the court DISMISSES WITHOUT PREJUDICE plaintiffs' complaint for failure to exhaust administrative remedies under section 804(h) of the Camp Lejeune Justice Act. In light of the conclusion, the court DECLINES to address how to apply Local Civil Rule 83.1(e)(5) to those attorneys who have made special appearances in "three unrelated cases in any twelve-month period." L. Civ. R. 83.1(e)(5).

SO ORDERED. This _10_ day of December, 2022.

JAMES C. DEVER III
United States District Judge

17

Case 7:22-cv-00153-D-KS   Document 17   Filed 12/20/22   Page 18 of 18